UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

| | |
|---|---|
| In re<br>**WOLVERINE, PROCTOR & SCHWARTZ, LLC,**<br>    Debtor | Chapter 7<br>Case No. 06-10815-JNF |

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

| | |
|---|---|
| **LYNNE F. RILEY, CHAPTER 7 TRUSTEE OF**<br>**WOLVERINE, PROCTOR & SCHWARTZ, LLC,**<br>    Plaintiff<br>v.<br>**TENCARA, LLC**,<br>    Defendant | Adv. P. No. 07-1179 |

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

**I. INTRODUCTION**

The issues before the Court are whether the Defendant, Tencara, LLC ("Tencara") is entitled to the default rate of interest set forth in its Secured Promissory Note (the "Note"), and, if so, the date from which the default rate of interest should accrue. For the

1

reasons set forth below, the Court finds that Tencara is entitled to default interest and that the default interest should accrue from 30-days after the last business day of June 2006 pursuant to paragraphs 2.2 and 4.1(a) of the Note.

## II. BACKGROUND

On January 21, 2011, this Court issued a Memorandum and Order in this adversary proceeding, entering judgment in favor of Tencara and against the Plaintiff, the Chapter 7 Trustee of the bankruptcy estate of Wolverine, Proctor & Schwartz, LLC (the "Trustee"), with respect to all counts of the Trustee's Second Amended Complaint. In its order, the Court scheduled a hearing to determine the allowable amount of Tencara's proof of claim.

The Court incorporates by reference its Memorandum and Order. *See* Riley v. Tencara, LLC (In re Wolverine, Proctor & Schwartz, LLC), __ B.R. __, 2011 WL 212834 (Bankr. D. Mass. Jan. 21, 2011). Additionally, the Court incorporates the findings set forth in the parties' "Stipulation Regarding Allowance and Payment of Tencara Claim," which the Court approved on April 20, 2011. Pursuant to their Stipulation, the parties recited the following:

> WHEREAS, the Debtor commenced the above bankruptcy proceedings ("Proceedings") under Chapter 7 of the Bankruptcy Code ("Code") on April 1, 2006;
> WHEREAS, Tencara filed a proof of claim in the Proceedings, docketed as claim no. 7, asserting a secured claim in the amount of at least $1,896,476.67 ("Tencara Claim"),
> WHEREAS, the Trustee commenced the within adversary proceeding against Tencara, seeking to recharacterize as equity or equitably subordinate the Tencara Claim and other relief;
> WHEREAS, on January 21, 2011, the Court made findings of fact and conclusions of law as reflected in a Memorandum and separate order

("Order") granting judgment in the favor of Tencara, denying the relief requested by the Trustee, and setting for further determination the amount of the Tencara Claim;

WHEREAS, on February 17, 2011, Tencara filed the Post-Trial Statement of Claim and Amendment To Proof of Claim No. 7 ("Amended Tencara Claim") pursuant to which Tencara amended its original proof of claim and sought a claim of no less than $4,084,304, comprised of principal, accrued interest at the default rate, and fees and costs (collectively, such fees and costs are referred to as "Costs");

WHEREAS, on February 22, 2011, the Trustee filed a Response to Post-Trial Statement of Claim and Amendment To Proof of Claim No. 7, which has been considered by the Court and the parties to be an Objection to the Amended Tencara Claim ("Objection"), pursuant to which the Trustee objected to the allowance of interest at the default rate and Costs, and sought further detail and information regarding the Costs;

WHEREAS, on February 23, 2011, the Court held a preliminary hearing on the Objection;

WHEREAS, on March 2, 2011, the Court entered an interim order with respect to the Tencara Claim providing for the payment of totaling in the amount of $3,362,753.13 together with interest at the rate of $526.80 per day for each day after March 1, 2011, such payment to include

> (i) payment to Tencara LLC in the amount of $2,828,384.23 representing payment in full of principal in the amount of $1,896,476.67 and payment of nondefault interest in the amount of $929,907.56 through March 1, 2011, and payment of any additional interest accruing after March 1, 2011 until payment at the rate of $526.80 per day;
> (ii) an interim payment to Nixon Peabody LLP in the amount of $462,176.90 with respect to the attorneys' fees and costs incurred by Tencara, LLC;
> (iii) an interim payment to Mesirow Financial in the amount of $72,192 with respect to Costs incurred by Tencara, LLC; and it is further [sic]

WHEREAS, the Interim Order was without prejudice to the rights of the parties regarding the issue of Costs and the application of the default rate of interest;

WHEREAS, the Trustee has made the payments ("Interim Payments") as directed under the Interim Order;

WHEREAS, Tencara has provided the Trustee with documentation regarding

the Costs;

WHEREAS, the Trustee and Tencara wish to resolve the disputes regarding the Objection, without the further cost, expense and risk of litigation, but only on the terms set forth herein;

Additionally, the parties agreed to the following:

1. The Trustee agrees that Tencara will be entitled to an allowed claim for Costs in the amount of $1,026,237.79 including $ 881,853.79 representing the fees and expenses of Nixon Peabody, LLP and $144,384 representing the fees of Mesirow Financial.

2. Tencara agrees not to seek any further Costs, expenses or fees from the estate, and agrees the Costs will be limited to the amounts provided in paragraph 1.

3. Tencara reserves the right to assert its entitlement to additional interest based on the application of the default rate and the Trustee reserves the right to dispute that Tencara is entitled to such interest. The parties agree that, unless requested by the Court, the issue of Tencara's entitlement to such additional interest may be determined by the Court based on the pleadings to date and without the requirement for a further hearing.

4. The Trustee agrees to pay the balance of the Costs remaining after application of the Interim Payments (such payments to be $ $419,676.89 to Nixon Peabody, LLP and $72,192 to Mesirow Financial) within five business days of an order approving the Stipulation, provided however that in the event such order is reversed or modified on appeal or otherwise and the amount of such Costs is determined to be less than such payments, such payments are subject to repayment by Tencara, Nixon Peabody LLP or Mesirow Financial as applicable.

In view of the parties' Stipulation, the only issues to be determined by the Court are whether Tencara is entitled to the default rate of interest set forth in the Note and the date of default.

**III. THE TERMS OF THE NOTE**

The Note provides in pertinent part the following:

2. <u>Interest; Payment At Maturity Date; Optional Prepayment</u>

2.1 <u>Interest</u>. This Note shall bear interest at a rate of ten percent (10%) per annum on the unpaid principal amount hereof from and including the date hereof until such principal amount shall have been paid in full. Interest on this Note shall be computed on the basis of a 360 day year of twelve 30-day months. After the occurrence of an Event of Default, the interest rate shall be increased to twelve percent (12%) per annum.

2.2 <u>Interest Payments</u>. Except as otherwise prohibited by third party subordination arrangements as to which the Holder and the Company both shall have agreed in writing, interest shall be paid with respect to this Note on the last Business Day of each march, June, September and December, commencing on the last Business Day of March 2005 or on such other three monthly intervals as the holder may specify (each, and "Interest Payment Date"). On (i) the Maturity Date or (ii) the earlier maturity of the accelerated Note pursuant to Section 4 hereof, the Company shall pay all accrued and unpaid interest on the unpaid principal amount of the Note.

***

4. <u>Events of Default</u>

4.1 <u>Defaults on Note</u>. The company shall fail to pay (i) any principal of the Note when the same becomes due and payable, whether upon maturity, acceleration or otherwise or (ii) any interest on the Note for a period of 30 days after the same shall become due and payable.

**IV. DISCUSSION**

Section 506(b) of the Bankruptcy Code provides in pertinent part:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such

5

claim arose.

11 U.S.C. § 506(b).  Section 506(b) is an exception to the general rule that interest stops accruing on prepetiton claims on the date of the filing of the bankruptcy case, *see* 11 U.S.C. § 502(b)(2), as section 506(b) provides that oversecured creditors may receive postpetition interest on their claims.  In <u>U.S. v. Ron Pair Enterprises, Inc.</u>, 489 U.S. 235 (1989), the United States Supreme Court  explained that for secured creditors "[r]ecovery of postpetition interest is unqualified. Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose." <u>Id.</u> at 241.  *See also* <u>Wooley v. Faulkner (In re SI Restructuring, Inc.)</u>, 542 F.3d 131, 137 (5th Cir. 2008); <u>In re Courtland Estates Corp.</u>, 144 B.R. 5, 9 (Bankr. D. Mass. 1992).

As set forth in the Court's Memorandum, there is no dispute that Tencara is oversecured. *See* <u>In re Wolverine Proctor &Schwartz, LLC</u>, 2011 WL 212834 at *3.  On June 28, 2006, the Court conducted an auction of the Debtor's assets which were security for the Note held by Tencara in the face amount of $1.9 million, finding that the successful bidder at the auction was CPM Holdings for the sum of $8.2 million plus additional consideration of $500,000.  On July 5, 2006, the Court entered an "Order Approving Sale of Substantially all of the Debtor's Business Assets Outside the Ordinary Course of business, Free and Clear of Liens, Claims and Encumbrances pursuant to 11 U.S.C. § 105 and § 363."  Pursuant to the Court's order, "[a]ny Liens consisting of liens and security interests or encumbrances ("Security Interests") . . . attach[ed] to the proceeds of the sale but only to the extent such Security Interests are valid, perfected and enforceable."

Courts are not in agreement as to whether a creditor is entitled to interest at the default rate provided for in the agreement. A majority of courts has determined that the default rate of interest set forth in the contract presumptively applies unless it were to produce an inequitable result. *See* The Southland Corp. v. Toronto-Dominion (In re Southland Corp.), 160 F.3d 1054, 1059-60 (5th Cir. 1998) (citing, *inter alia*, In re Terry, Ltd. P'ship, 27 F.3d 241, 243-44 (7th Cir. 1994), *cert. denied,* Invex Holdings, N.V. v. Equitable Life Ins. Co. of Iowa, 513 U.S. 948 (1994); and In re Courtland Estates, 144 B.R. 5, 9 (Bankr. D. Mass. 1992)).

In In re AE Hotel Venture, 321 B.R. 209 (Bankr. N.D. Ill. 2005), the court articulated the following standard for the allowance of the default rate of interest:

> Generally speaking, interest compensates for the delay in receiving money owed: "the loss of the time value of money." In re Continental Ill. Sec. Litig., 962 F.2d 566, 571 (7th Cir.1992); *see also* Art Press Ltd. v. Western Printing Mach. Co., 852 F.2d 276, 278 (7th Cir.1988). GMACCM arrived at the interest rate it believed would compensate for that loss in the Note: a rate of 9.72%. That being so, the difference between the original rate and the 14.72% default rate—a difference of 5%—could not have been meant to perform the usual function of interest. The time value of GMACCM's money, after all, did not magically increase by 5% once AE Hotel defaulted.
>
> Default interest is instead designed to reimburse creditors for "extra costs incurred after default." In re Consol. Props. Ltd. P'ship, 152 B.R. 452, 455 (Bankr. D. Md. 1993); *see also* In re Vest Assocs., 217 B.R. 696, 701 (Bankr. S.D.N.Y. 1998). Default interest, then, is not true interest at all. It is a form of late charge and thus is a "charge" for purposes of section 506(b). *See* Fischer Enters., Inc. v. Geremia ( In re Kalian), 178 B.R. 308, 316–17 (Bankr. D.R.I. 1995) (deeming default interest to be a "charge"); *see also* Consol. Props., 152 B.R. at 455 (noting that default interest is "more in the nature" of a charge); *but see* 4 A. Resnick & H. Sommer, Collier on Bankruptcy ¶ 506.04[2][b][ii] at 506–112 (15th rev. ed.2004) (stating that "[i]n general, a default rate of interest is properly a form of interest").

In re AE Hotel Venture, 321 B.R. at 215-16 (footnote omitted). The court concluded: "[b]ecause GMACCM's default interest is actually a charge, it must be "reasonable" to be allowed." Id. at 216 (citing 11 U.S.C. § 506(b), and Consol. Props., 152 B.R. at 456), adding "[d]efault interest is not a "reasonable" charge, however, if it compensates for an injury that has already been compensated in some other way under the parties' agreement. Id. (citing In re 1095 Commonwealth Ave. Corp., 204 B.R. 284, 305 (Bankr. D. Mass.1997), and Consol. Props., 152 B.R. at 458).[1] The court in AE Hotel Venture also reasoned:

> Although interest is also sometimes charged to compensate for the risk of non-payment, *see* Till v. SCS Credit Corp., 541 U.S. 465, 479–80, 124 S.Ct. 1951, 1961–62, 158 L.Ed.2d 787 (2004), default interest sought under section 506(b) performs no such function. Because a creditor claiming default interest under section 506(b) is oversecured, the creditor will be paid in full. Arguably, in fact, default interest never compensates for any risk of nonpayment. A "risk" is the possibility of experiencing some harm or loss. American Heritage Dictionary 1557 (3rd ed.1992). Once the harm comes about, however, there is no longer any "risk" of it. When a default interest rate comes into effect, there has already been non-payment. Indeed, non-payment is what makes the rate effective in the first place. At that point, non-payment is not a "risk"; it is a reality.

AE Hotel Venture, 321 B.r. at 216 n. 8.

In In re Jack Kline Co., Inc., 440 B.R. 712, 745 (Bankr. S.D. Tex. 2010), the court set forth a list of factors that courts may consider in determining whether an oversecured creditor is entitled to the contractual default rate of interest. It stated:

---

[1] Although the court in AE Hotel Venture cited In re 1095 Commonwealth Ave. Corp. for that proposition, the court in In re 1095 Commonwealth Ave, Corp., awarded an oversecured creditor postpetition interest at the default rate. The court rejected the creditor's request for late fees finding that they constituted a second recovery for the same loss covered by the default rate of interest. 204 B.R. at 305.

8

> Relevant factors in a Chapter 7 case that weigh against a presumptively valid default rate of post-petition interest under the balancing of the equities test in Laymon [Bradford v. Crozier (In re Laymon), 958 F.2d 72 (5th Cir. 1992)] include: (1) whether the spread between default and non-default interest rates is large; (2) whether the over-secured creditor was obstructing the bankruptcy process; (3) whether junior creditors will be harmed if the over-secured creditor is awarded default interest; (4) whether the over-secured creditor ever faced a realistic risk of nonpayment of its debt either before or during the bankruptcy proceedings; (5) whether there is evidence that the non-default contract rate was the prevailing market rate of interest at the time of default and thereafter; (6) whether there is any justification for an increased rate to compensate for an assumed increased risk following default; and (7) whether liquidation of assets will benefit parties in interest. *See* Yazoo, 2009 WL 2857863 at *3 & n. 2 (citing Southland, 160 F.3d at 1060); Sheppley, 62 B.R. at 278–79. This list, however, is not exhaustive and the court may consider other factors it deems pertinent to the particular facts of the case. Southland, 160 F.3d at 1060 ("[The] suggestion that a balancing of the equities requires resort to a particular list of factors is by definition flawed. The very purpose of equity is to exalt the individual characteristics of a case over law's hard and fast rules."). As such, this Court will also include a "catch-all" factor so that it may consider other miscellaneous equitable considerations.

440 B.R. at 745-46 (footnote omitted).

Applying those factors to the instant case, the 2% difference between the interest rate and the default interest rate is not substantial. Tencara did not obstruct the bankruptcy process. Indeed, it facilitated that process by entering into a Borrowing Stipulation with the Chapter 7 Trustee pursuant to which it agreed to advance up to $105,000 to meet certain expenses to maintain and preserve the assets of the bankruptcy estate. *See* In re Wolverine, Proctor & Schwartz, LLC, 2011 WL 212834 at *2; *see also* Borrowing Stipulation dated June 2, 2006 between the Chapter 7 Trustee and Tencara, which the Court approved on June 7, 2006. With respect to the third factor, harm to creditors, the Court finds that any increase

9

in the amount of Tencara's secured claim diminishes the funds available to distribute to priority and unsecured creditors.

From the commencement of an adversary proceeding against it by the Chapter 7 Trustee on May 1, 2007 and during the four years of litigation, Tencara faced a realistic risk of nonpayment of its debt during the bankruptcy case. The Court was presented with no evidence that the non-default contract rate was the prevailing market rate of interest at the time of the default. Nevertheless, the Court takes judicial notice that the default rate of interest is the same as the rate of interest added to judgments for damages in contract actions under Massachusetts Law. *See* Mass. Gen. Laws ch. 231, § 6C.

Finally, the Court concludes there is justification for the increased rate of interest. Even were this Court to adopt the minority view that default interest is a charge which must be reasonable, the Court finds that the 12% default rate is reasonable. Moreover, there is authority in the bankruptcy court for the district of Massachusetts to permit payment of the default interest rate. *See* In re 1095 Commonwealth Ave. Corp., 204 B.R. at 305; In re Courtland Estates Corp., 144 B.R. at 9; In re White, 88 B.R. 494, 498 (Bankr. D. Mass. 1988). Unlike the circumstances in In re White, 88 B.R. 498 (Bankr. D. Mass. 1988), the contractual default rate is neither a penalty nor unconscionable.

## V. CONCLUSION

Weighing the relevant factors, the Court finds that Tencara is entitled to interest at the default rate from a date which is 30 days after last business day of the month of June 2006. At that time, the Chapter 7 Trustee had sold substantially all the assets of the Debtor

and the Court's order of July 5, 2006 was a final order.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: May 4, 2011